UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA B. BUSTOS,<br><br>                         Plaintiff,<br><br>v.<br><br>CHASE,<br><br>                         Defendant. | Case No.: 16-CV-0822-AJB-KSC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>(Doc. Nos. 15, 16) |

This matter is before the Court on Defendant JPMorgan Chase Bank, N.A.'s ("JPMorgan") motion to dismiss Plaintiff Linda B. Bustos's ("Bustos") second amended complaint.[1] (Doc. Nos. 15, 16.) The Court finds the matter suitable for disposition on the papers, without oral argument, pursuant to Local Civil Rule 7.1.d.1. Accordingly, the hearing date currently set for **_November 23, 2016_**, is hereby **VACATED**. For the reasons set forth below, JPMorgan's motion is **GRANTED**.

### BACKGROUND

The facts giving rise to this dispute are simple and sparse.[2] On February 12, 2016,

---

[1] JPMorgan contends Bustos has erroneously sued it as Chase. (Doc. No. 15-1 at 2.)
[2] Unless otherwise noted, all facts in this section are taken from the second amended complaint ("SAC"). (Doc. No. 13.)

Bustos submitted two written requests to JPMorgan: a qualified written request ("QWR") and a loan modification or loss mitigation package. Bustos contends JPMorgan failed to notify her within five business days of receipt of her loan modification package, which she alleges is a violation of 12 C.F.R. § 1024.41(b). She alleges she "has suffered mental, psychological stress, depression, anxiety [*sic*] and her house is in the process of foreclosure" due to JPMorgan "not following the Rules." (Doc. No. 13 at 3.)

Bustos instituted this lawsuit *pro se* on April 7, 2016, by filing the original complaint. (Doc. No. 1.) Because Bustos sought leave to proceed *in forma pauperis*, (Doc. No. 2), the Court screened the complaint pursuant to 28 U.S.C. § 1915 and found it failed to state a claim, (Doc. No. 3). Thus, the Court dismissed the complaint with leave to amend and denied as moot Bustos's IFP application. (Doc. No. 3.) Bustos was given sixty days from that order's issuance to file an amended complaint curing the deficiencies noted therein. (*Id.* at 4.)

On May 16, 2016, Bustos paid the filing fee. (Doc. No. 4.) She then apparently served an amended complaint on JPMorgan on May 31, 2016, but did not file it with the Court. (Doc. No. 7-2 ¶ 4.) JPMorgan successfully moved to dismiss the unfiled amended complaint on June 21, 2016. (Doc. Nos. 7, 12.) Bustos filed the now operative second amended complaint ("SAC") on August 11, 2016. (Doc. No. 13.) JPMorgan again moved to dismiss the complaint on August 22, 2016. (Doc. Nos. 15, 16.) Bustos apparently served her opposition on JPMorgan, but failed to file it with the Court. (*See* Doc. No. 18 at 2.) Taking into account Bustos's *pro se* status, the Court permitted her an opportunity to file her opposition with the Court by September 30, 2016. (Doc. No. 20.) Bustos did so, but only the first page of that opposition. (Doc. No. 21.)

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Plaintiffs must also plead, however, "enough facts to state a claim to relief that

is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard thus demands more than a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not take legal conclusions as true "merely because they are cast in the form of factual allegations." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998).

Where dismissal is appropriate, a court should freely grant leave to amend. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009). However, where it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment," the action must be dismissed without leave to amend. *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam).

## DISCUSSION

JPMorgan again asks the Court to dismiss Bustos's complaint with prejudice. JPMorgan predicates its request on the fact that it and the Court are still unable to determine from the SAC and its attachments whether Bustos's February 12th communications qualify as a QWR.[3] To the extent Bustos seeks to hold JPMorgan liable for failing to respond to a

---

[3] JPMorgan also asks for dismissal with prejudice because Bustos filed the SAC late. (Doc. No. 15-1 at 2.) Given that Bustos, who is proceeding *pro se*, filed the SAC late by only one day, the Court declines to dismiss the action with prejudice on this basis.

QWR, the Court agrees with JPMorgan that such a claim must be dismissed with prejudice.

Congress enacted RESPA in part to "insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges by certain abusive practices." 12 U.S.C. § 2601(a). RESPA creates a private right of action for three types of wrongful acts: "(1) payment of a kickback and unearned fees for real estate settlement services, 12 U.S.C. § 2607(a), (b); (2) requiring a buyer to use a title insurer selected by the seller, 12 U.S.C. § 2608(b); and (3) the failure by a loan servicer to give proper notice of a transfer of servicing rights or to respond to a qualified written request for information about a loan, 12 U.S.C. § 2605(f)." *Choudhuri v. Wells Fargo Bank, N.A.*, No. C 11-00518 SBA, 2011 WL 5079480, at *8 (N.D. Cal. Oct. 25, 2011) (citing *Patague v. Wells Fargo Bank, N.A.*, No. C 10-03460 SBA, 2010 WL 4695480, at *3 (N.D. Cal. Nov. 8, 2010)).

Any claim arising from JPMorgan's alleged failure to respond to a QWR would be of the third variety. Accordingly, whether Bustos's complaint states a claim turns on the Court's ability to assess whether the February 12th communication qualifies as a QWR. 12 U.S.C. § 2605(e)(1)(B) defines a QWR as

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—
>
> > (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
> >
> > (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

The Ninth Circuit has endorsed a broad interpretation of what constitutes a QWR: "Any reasonably stated written request for account information can be a qualified written request. To the extent that a borrower is able to provide reasons for a belief that the account is in error, the borrower should provide them, but any request for information made with

sufficient detail is enough under RESPA to be a qualified written request and thus trigger the servicer's obligation to respond." *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666 (9th Cir. 2012) (quoting *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 687) (7th Cir. 2011)).

Accordingly, whether Bustos states a violation for an alleged failure to respond to a QWR requires the Court to assess the sufficiency of the communication. The Court cannot do so here because Bustos has yet again failed to provide any facts concerning her QWR's contents. As the Court informed Bustos when dismissing her unfiled amended complaint, requests for loan modification that do not challenge the accuracy of the borrower's account do not qualify as QWRs. (Doc. No. 12 at 3–5.) *See Powell v. GMAC Mortg. LLC*, No. 09-CV-04928-LHK, 2010 WL 4502705, at *6 (N.D. Cal. Nov. 1, 2010) ("Numerous courts have held that requests for loan modification are not [QWRs] under RESPA."); *Cruz v. Mortg. Lenders Network, USA*, No. 09-CV-1679 BEN (AJB), 2010 WL 3745932, at *2 (S.D. Cal. Sept. 20, 2010) (stating § 2605(e)(1)(B)'s inclusion of requests for "other information" clearly "relates to requests for information pertaining to the accuracy of a borrower's account or the servicing of the loan[,]" not to "requests, such as Plaintiff's requests here . . . , for a loan modification"). Here, Bustos provides no facts whatsoever concerning the QWR she purportedly submitted to JPMorgan on February 12th. As such, the Court cannot determine where the February 12th communication is a "reasonably stated written request for account information . . . ." *Medrano*, 704 F.3d at 666.

Accordingly, to the extent Bustos predicates her case on a failure to respond to a QWR, the Court **GRANTS** JPMorgan's motion to dismiss. This was Bustos's third attempt to cure the deficiencies with her QWR claim. As such, the Court finds it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Broughton*, 622 F.2d at 460. The Court therefore **DISMISSES** the QWR claim **WITH PREJUDICE**.

But that does not end the inquiry. The SAC makes clear that two communications are at issue, the second being a loan modification package Bustos sent to JPMorgan on February 12, 2016. (Doc. No. 13 at 1.) 12 C.F.R. § 1024.41(b)(2)(i)(B) requires a servicer

to "[n]otify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete." JPMorgan argues any claim for violation of § 1024.41(b) should be dismissed because Bustos did not allege the contents of the February 12th communication, she attached a response from JPMorgan to her communication, and she alleges in only conclusory terms that she was damaged by JPMorgan's failure to respond. (Doc. No. 15-1 at 4–5.)

Construing the SAC liberally as the Court must in light of Bustos's *pro se* status,[4] *see Zichko v. Idaho*, 247 F.3d 1015, 1020 (9th Cir. 2001), the Court finds Bustos has sufficiently pleaded that she sent a loan modification package to JPMorgan. While the facts are sparse—to say the least—they are sufficient to put JPMorgan on notice of Bustos's claim. Bustos has alleged she submitted a loan modification package to JPMorgan on February 12th. She supports this assertion by attaching a letter from JPMorgan, dated March 29, 2016, which states JPMorgan "completed our review of your request for mortgage assistance[.]"[5] (Doc. No. 13 at 6.) She also alleges JPMorgan did not acknowledge receipt of this application within five business days. These allegations are

---

[4] In its last order granting JPMorgan's motion to dismiss, the Court erroneously noted that Bustos is now represented by counsel. It appears Bustos remains *pro se*.

[5] JPMorgan claims that Exhibit B to the SAC—a copy of JPMorgan's response to Bustos after completing its review of her loan modification package—inherently contradicts the allegation that JPMorgan never sent her a response. (Doc. No. 15-1 at 4–5.) However, as alleged, the response attached as Exhibit B does not satisfy the requirements of 12 C.F.R. § 1024.41(b)(2)(i)(B). That section requires the servicer to send the borrower an acknowledgement of the borrower's loan modification application, including whether the application is complete or incomplete, within five business days. Accepting the allegations of the SAC as true, JPMorgan was required to send this acknowledgement five business days after February 12th. Certainly, a response dated March 29, 2016, does not satisfy this requirement. Rather, this response is likely one made under 12 C.F.R. § 1024.41(c)(1)(i), which requires a servicer that receives a complete application to "[e]valuate the borrower for all loss mitigation options available to the borrower[.]"

sufficient to withstand Rule 12(b)(6). *See Thomas v. Wells Fargo Bank, N.A.*, No. 3:15-CV-02344-GPC-JMA, 2016 WL 1701878, at *5 (S.D. Cal. Apr. 28, 2016) (finding plaintiffs plausibly alleged violation of § 1024.41(b) because they alleged "Wells Fargo either did not [acknowledge receipt] within the five (5) days required or did not indicate to Plaintiffs whether the application was complete or incomplete"); *Jones v. Aegis Wholesale Corp.*, No. 2:15-CV-01134-JAM-CKD, 2015 WL 9260837, at *2–3 (E.D. Cal. Dec. 18, 2015) ("Plaintiffs allege—and the Court must accept as true—that Nationstar did not . . . send notice to Plaintiffs within five days [] as required by section 1024.41(b)(2)(i). Because the FAC adequately alleges a violation of this section, the Court denies Defendants' motion to dismiss this first claim as it relates to Nationstar.").

However, the section *does* require that such an application be sent "45 days or more before a foreclosure sale[.]" 12 C.F.R. § 1024.41(b)(2)(i). While Bustos provides that she submitted her loan modification application to JPMorgan on February 12th, the SAC is silent as to when the foreclosure sale was scheduled. This silence is fatal to the SAC's sufficiency. *See Thomas*, 2016 WL 1701878, at *5 ("By [its] plain terms, § 1024.41(b) applies where a servicer receives a loss mitigation application '45 days or more before a foreclosure sale' . . . . [T]he Court construes th[is] phrase[] to have [its] plain meaning: when a servicer receives a loss mitigation application the requisite amount of days before a foreclosure sale occurs, the servicer must comply with the applicable requirements of [§ 1024.41(b)]"); *see also Joussett v. Bank of Am., N.A.*, No. 15-6318, 2016 WL 5848845, at *6 (E.D. Pa. Oct. 6, 2016) ("Joussett's claim fails because he does not allege that he filed a timely application."); *Berene v. Nationstar Mortg. LLC*, No. 14-61153-Civ-Scola, 2016 WL 3787558, at *3 (S.D. Fla. June 15, 2016) ("The application that the Borrowers submitted on February 7th did not trigger any of RESPA's borrower protections. There is no dispute that at the time the Borrowers submitted the February 7th application, a foreclosure sale was then scheduled for March 11, 2016, only *thirty-two* days away. Under Regulation X a servicer is required to take certain actions if an application, even if incomplete, is received *forty-five* days before a sale . . . . Accordingly, Nationstar could

have sent the Borrowers' February 7th application straight to the shredder and proceeded with the scheduled sale without running afoul of RESPA."). For this reason, the Court **GRANTS** JPMorgan's motion.[6]

The Court recognizes that this is the third time it has dismissed Bustos's complaint. However, the first two dismissals were predicated on Bustos's failure to set forth sufficient facts of an alleged violation of 12 U.S.C. § 2605(f) for failure to respond to a QWR and made no mention of an alleged violation of 12 C.F.R. § 1024.41 for failure to acknowledge receipt of a loan modification package. Because the Court had not commented on the complaint's sufficiency as to this claim in its prior orders dismissing the complaints, JPMorgan cites no authority in its motion to dismiss as to this particular claim, and Bustos is proceeding *pro se*, the Court's dismissal is **WITHOUT PREJUDICE**.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant JPMorgan Chase Bank, N.A.'s motion to dismiss. (Doc. Nos. 15, 16.) To the extent Bustos brings a claim for JPMorgan's failure to respond to her QWR, that claim is **DISMISSED WITH PREJUDICE**. To the extent Bustos brings a claim for JPMorgan's failure to respond to her loan modification package, that claim is **DISMISSED WITHOUT PREJUDICE**. Bustos must amend the complaint, correcting the deficiencies noted herein, by filing a third amended complaint no later than ***Friday, December 2, 2016***. Failure to file the amended complaint with the Court will result in the Court's dismissal of this case with prejudice.

**IT IS SO ORDERED**.

Dated:  October 12, 2016

Hon. Anthony J. Battaglia
United States District Judge

---

[6] Based on this conclusion, the Court need not reach JPMorgan's final argument that Bustos's failure to allege damages resulting from JPMorgan's failure to acknowledge receipt of the load modification package is fatal to her claim. JPMorgan relies solely on the Court's prior order dismissing the amended complaint; however, that order dealt only with a claim for failure to respond to a QWR.